LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (State Bar No. 151990)
bfreedman@lftcllp.com
Ellyn S. Garofalo (State Bar No. 158795)
egarofalo@lftcllp.com
Sean M. Hardy (State Bar No. 266446)
smhardy@lftcllp.com
1801 Century Park West, Fifth Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045

Attorneys for Plaintiff CHARLES JOHNSON dba CJ CATTLE CO.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF IMPERIAL**

| | |
|---|---|
| CHARLES JOHNSON, an individual doing business as CJ CATTLE CO.,<br><br>Plaintiffs,<br><br>vs.<br><br>RABO AGRIFINANCE LLC, a Delaware limited liability company; MECHANICS BANK, a California corporation; FOCUS MANAGEMENT GROUP USA, INC., a Florida corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: ECU003300 (Lead Case)<br>Consolidated with<br>Imperial County Case No: ECU004308 and Kings County Case No. 23CU0309<br><br>[Assigned for all purposes to Judge Jeffrey B. Jones, Dept. 5]<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) VIOLATION OF PENAL CODE § 496(c);**<br>**(2) CONVERSION;**<br>**(3) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;**<br>**(4) NEGLIGENCE; AND**<br>**(5) ELDER ABUSE IN VIOLATION OF WELFARE AND INSTITUTIONS CODE § 15610.3(a)(2)**<br><br>Action filed: September 12, 2025<br>Trial Management Conf: September 15, 2026<br>Trial Date: September 16, 2026 |

For his Fourth Amended Complaint, Plaintiff Charles Johnson, doing business as CJ Cattle Co. (collectively, "Johnson", "CJ" or "Plaintiff"), alleges as follows.

## INTRODUCTION

1. This is a tale of modern-day cattle thieves. For over 30 years, Plaintiff, an elderly lawyer, was in the business of buying and selling cattle through his agent, Phillips Cattle Company ("Phillips").[1] Plaintiff entrusted Phillips with millions of dollars for the purchase of cattle and feed, as well as Plaintiff's proceeds from the sale of his cattle. Phillips was required to hold Plaintiff's funds in custodial accounts (the "Custodial Accounts") until they were needed to pay for cattle, purchase feed or, with respect to Plaintiff's annual profits, disbursed to Plaintiff or at his direction.

2. Phillips initially maintained its Custodial Accounts at Defendant Rabo Agrifinance, LLC ("Rabo"). In or about 2018, Rabo transferred its accounts including the custodial accounts holding Plaintiff's funds, to Mechanics Bank. Rabo, however, held an ownership interest in Mechanics Bank and continued to exert control over Mechanics Bank's handling of the Custodial Accounts.

3. Unbeknownst to Plaintiff, by 2019, Phillips was insolvent and being kept afloat with loans from Rabo. As Phillips' financial condition deteriorated, and Phillips struggled to service its Rabo loans, Rabo worked hand in glove with Phillips to hide Phillips' insolvency and artificially prop up Phillips' balance sheet by siphoning millions of dollars in Plaintiff's funds from the Mechanics Bank Custodial Accounts to Phillips' operating accounts and then into Rabo's coffers.

4. In 2023, as Phillips teetered on the brink of financial bankruptcy, jeopardizing its ability to service Phillips' Rabo loans, Rabo installed its own longstanding financial advisors, Defendant Focus Management Group USA, Inc. ("Focus"), to advise Phillips and protect Rabo's interests. The guidance provided by Focus (including that Phillips was free to use Plaintiff's funds to pay the Rabo loans) prolonged Phillips and Rabo's scheme to exploit Plaintiff's assets to repay its loans and artificially keep the company afloat.

[1] Phillips has been sued separately in the consolidated case captioned *Charles Johnson dba CJ Cattle Co. v. Phillips Cattle Co., Inc., et al.*, Case No. ECU 003300 (the "Related Case").

5. The scheme to conceal Phillips' insolvency by using Plaintiff's funds was successful until mid-2023 when, having depleted the Custodial Accounts, Phillips was unable to find sufficient funds to replenish Plaintiff's funds and hide a $7 million shortfall in Plaintiff's accounts.

6. In this lawsuit, Plaintiff seeks to recover the millions of dollars stolen from him and the resulting damages including the destruction of his highly successful cattle business.

**THE PARTIES**

7. Plaintiff Charles Johnson is, and at all relevant times was, an individual over the age of 65, residing in the County of Imperial, State of California. Johnson does business under the fictitious business name of CJ Cattle Co.

8. Defendant Rabo Agrifinance, LLC is, and at all relevant times was, a Delaware limited liability company authorized to transact business in California.

9. Defendant Mechanics Bank ("Mechanics") is, and at all relevant times was, a federally insured banking corporation doing business in California.

10. Plaintiff is informed and believes, and based thereon alleges, that Defendant Focus Management Group USA, Inc. is, and at all relevant times was, a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Illinois, doing business in California.

11. Plaintiff is unaware of the true names and capacities of those defendants sued as DOES 1 through 20, inclusive, and therefore sues them under fictitious names. Plaintiff is informed and believes that each of the fictitiously named defendants participated in the conspiracy hereinafter alleged and/or assisted in taking, secreting, appropriating, obtaining, Plaintiff's property for a wrongful use or with intent to defraud, or both. Plaintiff will amend this Complaint to set forth the true names of the fictitiously named defendants after they have been ascertained.

12. Plaintiff is informed and believes, and on that basis alleges, that at all material times, Defendants and each of them, is and was acting as the agent, servant, employee, partner, joint-venturer, representative or principal of, and with the knowledge, consent, and permission of, and in conspiracy with, each Defendant and within the course, scope, and authority of that agency, service, employment, partnership, joint venture, representation, and conspiracy. Plaintiff further alleges on

information and belief that the acts of each Defendant was fully ratified by each Defendant. Specifically, and without limitation, Plaintiff alleges on information and belief that the actions, failures to act, breaches, conspiracy, and other misconduct alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and done with the cooperation and knowledge of each Defendant. Plaintiff further alleges on information and belief that each Defendant was the alter ego of one another, joint tortfeasors, and successors in interest such that each Defendant would be liable to Plaintiff.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The Long Relationship Between Plaintiff, Phillips and Rabo.

13. Plaintiff has been in the cattle business for over 30 years. As is typical in the cattle business, Plaintiff used a "feed lot" as its agent to acquire, house, feed and market its cattle. For decades Plaintiff relied on Phillips to provide these services.

14. The arrangement worked as follows. Each Fall/Winter, Plaintiff advanced funds sufficient to cover the purchase of between 4,000 and 8,000 head of cattle (the "Purchase Advance"). Phillips, Rabo and Mechanics knew that these funds were dedicated to the purchase of cattle and were to be held in Custodial Accounts until applied for their dedicated purpose. Plaintiff's Purchase Advance belonged to Plaintiff until Phillips paid for the purchase of his cattle. At no time did these funds belong to Phillips.[2]

---

[2] The initial, unverified Complaint in the Related Case, filed on January 4, 2024, contained the following unclear allegation: "Second, when CJ purchased the cattle and feed, it acquired full complete and clear title to the cattle free and clear of any lien and encumbrances from any third parties." (Jan. 1, 2024 Related Case Compl., ¶ 20.) That allegation was the result of mistake, inadvertence, inadequate knowledge of the facts at that time, and was filed during a time that Plaintiff was experiencing severe and life-threatening medical conditions that impacted his cognitive abilities and energy levels. These medical issues had persisted from Plaintiff's hospitalization in October 2023 through the time of the filing of the initial unverified Complaint on January 4, 2024.

The allegation mistakenly and inadvertently suggested that Phillips sold feed and cattle directly to Plaintiff and that title passed upon the exchange of money, and did not adequately describe how Phillips acted as an agent in acquiring and feeding cattle on Plaintiff's behalf. As stated in Paragraph 19 of the unverified Complaint in the Related Case, Plaintiff and Phillips determined the amount needed to acquire and feed

15. Once Phillips paid for the cattle, the purchase was complete, unencumbered title transferred to Plaintiff and the cattle were delivered to Phillips' feed lot where they were assigned a CJ Cattle lot and pen number.

16. The Purchase Advance was not the only money Plaintiff entrusted to Phillips. Each December, in anticipation of a delivery of calves, Plaintiff would send Phillips a multi-million dollar advance to cover the cost of one year's feed for the calves (the "Feed Prepayment"). The Feed

---

cattle for the upcoming feeding cycle each fall and that Plaintiff paid Phillips prior to receiving Plaintiff's steers at its yard. (Jan. 1, 2024 Related Case Compl., ¶ 19.)

Paragraph 21 of that same unverified pleading clarified that Phillips generally received Plaintiff's steers between December and April of the following year after Plaintiff had provided Phillips with the purchase money. (Jan. 1, 2024 Related Case Compl., ¶ 21.) Title to the steers would eventually pass to Plaintiff when Phillips received them at its yard, which is custom in the industry.

Additionally, Paragraph 20 of the initial, unverified Complaint in the Related Case inadvertently failed to clarify that Phillips was to use Plaintiff's prepaid feed monies for the express purpose of feeding Plaintiff's steers for the entire one-year feeding cycle as described throughout the original unverified Complaint.

Plaintiff cured the mistaken and inadvertent allegations in the Second, Third, and Fourth complaints in the Related Case to clarify Phillips' role as an agent and fiduciary in (i) acquiring Plaintiff's cattle from third parties on his behalf and for his benefit; (ii) feeding the acquired steers for the one-year feeding cycle; and (iii) that the purchase money Plaintiff provided to Phillips via his separate financing was to be used solely and exclusively for Plaintiff's benefit. Accordingly, the mistaken allegation in the initial, unverified Complaint in the Related Case that was subsequently cured by amendments is not a judicial admission. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 456 ["The doctrine of judicial admissions also does not apply to allegations in pleadings that have been superseded by amendments[.]").) Additionally, following the original, unverified Complaint in the Related Case, Plaintiff learned new and material facts verifying Phillips' fiduciary obligations with respect to the use of Plaintiff's purchase money and Phillips' violations of those fiduciary obligations including that: (i) Phillips had used Plaintiff's cattle and feed acquisition money to repay its loans with Rabo; (ii) Rabo knew and consented to this; and (iii) Rabo accounted for Plaintiff's prepaid feed monies as "consigned inventory" that belonged in a "special separate account"; and (iv) Phillips maintained a "Prepaid Feed" account.

Prepayment was held in a Custodial Account for Plaintiff's sole and exclusive benefit, until used to purchase feed for Plaintiff's cattle. Prior to its use, the Feed Prepayment belonged to Plaintiff.

17. After a year on Phillips' feed lot, Phillips sold Plaintiff's matured cattle to a processor, typically JBS Processing ("JBS"). The buyer wired Plaintiff's sales proceeds (the "Sales Proceeds") into one of the Custodial Accounts maintained by Phillips at Mechanics Bank. The Sales Proceeds belonged to Plaintiff, not Phillips. At Plaintiff's direction, Phillips would forward Plaintiff's proceeds first to Plaintiff's lender, Ag West Farm Credit ("Ag West") to pay down the line of credit Plaintiff used to make the annual prepayment to Phillips, with the balance or profits paid to Plaintiff. At no time was Phillips authorized to use Plaintiff's Sales Proceeds for Phillips' benefit or any other purpose.

**B. The Launch of Defendants' Scheme to Plunder the Custodial Accounts.**

18. Beginning in 2019, Phillips and Rabo embarked on a scheme to covertly and systematically plunder Plaintiff's funds held in the Custodial Accounts, for Plaintiff's benefit. As noted, the funds Plaintiff entrusted to Phillips fell into three buckets: (1) the Purchase Advance; (2) the Feed Prepayment; and (3) the Sales Proceeds.

19. Rabo began lending to Phillips in or about 2011. By 2019, Phillips was effectively insolvent and in jeopardy of defaulting on its loan obligations to Rabo. To avoid a default by Phillips, Phillips and Rabo contrived and executed a shell game to conceal Phillips' deteriorating financial condition, artificially inflate Phillips' finances and keep Phillips current on its Rabo loan repayments by shuffling funds between Phillips' Custodial Accounts and operating accounts. Unfortunately, the funds used to artificially prop up Phillips and service Phillips' Rabo loans belonged to Plaintiff.

20. In and around 2018, the Custodial Accounts holding Plaintiff's funds were transferred to Mechanics. These Custodial Accounts consisted of (1) a "Prepaid Feed" account; and (2) a "Customer Trust" account to hold, among other things, Plaintiff's Purchase Advances and Sales Proceeds.

21. Rabo and Mechanics knew that Phillips was required to maintain Plaintiff's funds in the Custodial Accounts and that Phillips could not use Plaintiff's funds for anything but their

dedicated purpose. Rabo nevertheless encouraged, directed and assisted Phillips in hijacking Plaintiff's funds either by depositing funds earmarked for the Custodial Accounts directly into Phillips' operating accounts or transferring Plaintiff's funds from the Custodial Accounts to Phillips' operating accounts, where they were used to satisfy Phillips' business operations including payments on the Rabo loans which were keeping Phillips afloat.

22. Communications between Phillips and Rabo evidence Phillips and Rabo's knowledge that the funds were being improperly used and their conscious efforts to conceal their activity from Plaintiff. For instance, on December 31, 2019, Phillips received Plaintiff's annual advance of $10,378,200. Phillips co-opted these funds for its own use. Phillips' chief financial officer, Denise Matejovsky ("Matejovsky") informed Phillips' principal, Robert Bauer ("Bauer"), that Rabo had consented to taking of Plaintiff's funds in an e-mail titled "Pay down on loans" which describes Matejovsky's call with Rabo loan officer Jared Redden ("Redden"):

> "I have been busy with Chuck [Johnson] for his year end. He will be bringing his money in on Tuesday. . . I called Jared to see if it is okay to paid down all the loans. He said that would be perfectly fine, there is no reason why we couldn't do it and they would understand why we are doing it."

23. In another example, on January 14, 2020, Redden and Matejovsky discussed that Phillips had used a significant amount of Plaintiff's Prepaid Feed monies to secretly "pay down Phillips" loans with Rabo. The next day, Matejovsky reminded Redden that "what we talked about yesterday, Robert [Phillips' CEO] doesn't want anyone to know, so please keep it confidential." Redden assured Matejovsky that he would "keep it quiet."

24. Then, in June 2021, at Phillips' request, Rabo provided Phillips with an emergency loan to cover-up Phillips' diversion of $1.8 million of Plaintiff's Sale Proceeds. Matejovsky thanked Redden, expressing her relief that "I am not going to jail, everything has cleared in checking account. Thanks for helping. Have a great 4th."

25. Mechanics was hardly an innocent bystander. Mechanics inexplicably allowed Rabo to monitor the Phillips accounts to alert Rabo when they were short on funds and needed an infusion of cash and followed Rabo's directions to transfer Plaintiff's funds out of the Custodial Accounts and

into Phillips operating accounts where they could be used to pay down Phillips' loan obligations to Rabo.

**C. Phillips' Diversion of Funds in the 2022 Cycle.**

26. By late 2021, Phillips was in dire financial straits. Until this point, Phillips had been able to meet its obligations with loans from Rabo or through its co-mingling of funds that should have been held in trust. By December 2021, however, Phillips was running out of road.

27. At this point, neither Phillips nor Rabo had disclosed its use of Plaintiff's funds as a lifeline to stave off Phillips' default on its Rabo loan and other obligations – facts that might have dissuaded Plaintiff from trusting Phillips with his money and cattle.

28. As a result, and still in the dark on Phillips' cratering finances and the misuse of his funds, on December 21, 2021, Plaintiff prepaid $11,484,435 for the 2022 purchases of cattle and feed (the "2022 Cattle"). The funds were initially deposited into the Custodial Accounts.

29. Phillips, however, was short of funds to meet a payment deadline on its revolving line of credit at Rabo. Accordingly, Phillips and Rabo decided to loot the Custodial Accounts holding Plaintiff's prepayments. To facilitate the payment, Rabo instructed Mechanics to lift any hold on the checks and Mechanics complied. Accordingly, two days after Plaintiff's deposit, Phillips transferred approximately $4.5 million from the Custodial Accounts into its operating account to "pay[] down the [Rabo] operating loan line." Phillips' Robert Bauer documented the transaction by writing that "In addition to paying down the operating line lets pay down the trust loan as we are paying interest on that as well." Redden assisted by directing Mechanics to immediately release Plaintiff's fund to cover Phillips' overdraft. To facilitate the release, Matejovsky emailed a copy of a check for an additional $850,000 feed advance to Redden, who emailed Mechanics to inquire whether Plaintiff's funds had been released to cover the overdrafts.

30. Phillips and Rabo next turned their sights on Plaintiff's proceeds from the sale of the 2022 Cattle. In or about May 2023, Phillips sold the 2022 Cattle to JBS for $7,484,498.62. Phillips was required to disburse these funds first to pay down Plaintiff's loan with Ag West, with the balance paid to Plaintiff. As customary, Matejovsky had provided Plaintiff with checks to Ag West

purportedly documenting payment of the 2022 Sales Proceeds to Plaintiff's lender that purportedly confirmed Phillips' proper disbursement of the 2022 Sales Proceeds to Ag West.

31. However, in or about June 2023, Plaintiff noticed that his Ag West loan statement was showing a balance of $7 million higher than it should have been based on the checks Matejovsky had provided.

32. When Plaintiff confronted Matejovsky, she admitted fabricating over 120 checks, which were shown to Plaintiff as proof that his loan was being paid down but, in fact, had never been sent to Ag West, Plaintiff's lender. In fact, Phillips had misappropriated $7,484,498.62 in proceeds from the sale of the 2022 Cattle to pay down its own Rabo loans and outstanding debts to vendors and other operational expenses, and thus the Custodial Account lacked sufficient funds to cover the fraudulent checks.

33. Caught red handed, Matejovsky provided Plaintiff with a list of the fake checks she admittedly created to mislead Plaintiff into believing his funds were being properly applied to pay down his Ag West loans when, in fact, the funds had been diverted for the benefit of Phillips and Rabo.

34. Realizing the end was near, in or about July 2023, Rabo directed Phillips to retain Focus Management Group as a financial advisor. Focus and Phillips entered into a contractual arrangement with Phillips on or about August 4, 2023. Focus undertook this assignment in order to act in the best interests of Rabo, as the two companies maintained a longstanding business relationship. At this point, Focus gained decision-making authority over Phillips relative to Plaintiff's property. Pursuant to this contractual arrangement, Focus, as Phillips' agent, immediately exercised possession and control over Plaintiff's property – his cattle and money, including the files and records thereof. This property included the $7,484,498.62 in funds from the sale of the 2022 cattle. At all times, Focus ultimately acted in the best interest of its financial benefactor, Rabo, and pursuant to Rabo's direction. In particular, Focus employees Simon Coughlin and Sam Williams began issuing instructions to Phillips General Manager Steven Snow concerning the handling of Plaintiff's property. On or about August 4, 2023, Focus claimed and took control of the assets from the sale of the 2023 Cattle on behalf of Phillips. Thus, the $7,833,862.72 million in proceeds from

the 2023 Cattle remains under the control, and subject to the direction, of Focus and Rabo. Internal Rabo documents reveal that, by the time Focus and Phillips entered into their contract on August 4, 2023, Rabo and Focus knew that only .7% (119 head) of the over 19,000 head of cattle on Phillips' yard actually belonged to Phillips. Nevertheless, Rabo and Focus asserted lien rights over 100% of the cattle on Phillips' yard.

35. This was not all. Phillips had acquired approximately 50% of the 2023 Cattle from Overland. Plaintiff learned that due to the shortfall in its accounts, and although Plaintiff had prepaid the purchase price, Phillips failed to pay Overland. Overland sued Phillips and CJ Cattle and, on August 8, 2023, Plaintiff settled with Overland for $650,000. Nevertheless, Plaintiff has yet to recover his $7,833,862.72 in proceeds from the sale of his 2023 Cattle, including the cattle purchased from Overland.

**D. Phillips' Diversion of Funds in the 2023 Cycle.**

36. In December 2022, still in the dark about Defendants' misdeeds, at Phillips' request, Plaintiff prepaid $9,766,620 to acquire and feed his cattle for the upcoming year (the "2023 Cattle"). Phillips again diverted Plaintiff's prepayment, which should have been held in the Custodial Account for future purchases of feed, to stave off collapse. Specifically, on December 22, 2022, Matejovsky alerted Bauer that she received "2 million from Chuck." Bauer responded by asking whether it gave Phillips some "breathing room." The next day, Matejovsky notified Bauer about holds on Plaintiff's prepayment check. Redden responded that he was "going to call higher ups" at Mechanics to get Plaintiff's funds released so that Phillips could access them to pay its own operating expenses.

37. Of the December 2022 advance for the 2023 Cattle, $3,750,000 was a deposit for the purchase of feed for the 2023 Cattle in the upcoming year. Notwithstanding Plaintiff's $3,750,000 Feed Prepayment, once it entered into its contractual relationship with Phillips on or about August 4, 2023, Focus instructed Phillips not to purchase feed for Plaintiff's cattle. Accordingly, it was necessary for Plaintiff to move the cattle to another feed lot, El Toro. Between August 15, 2023 and August 24, 2023, Focus demanded payments totaling $195,835 from Plaintiff for the release of his cattle.

38. Throughout August 2023, and prior to its appointment as a receiver on August 25, 2023, Focus exercised dominion and control over Plaintiff's property – his cattle and funds in the Custodial Accounts. In particular, Focus began demanding daily payments from Plaintiff to feed Plaintiff's cattle, despite Plaintiff having made a Feed Prepayment of $3,750,000.

39. For example, on August 18, 2023, Focus instructed Phillips to issue invoices totaling $63,718.11 to Plaintiff for the feed of Plaintiff's cattle. Plaintiff paid this amount.

40. On August 22, 2023, Focus employees Simon Coughlin and Sam Williams instructed Phillips to issue invoices totaling $52,520.21 to Plaintiff for the feed of Plaintiff's cattle. Plaintiff paid this amount.

41. On August 23, 2023, Focus employee Simon Coughlin instructed Phillips to issue invoices totaling $10,402.56 to Plaintiff for the feed of Plaintiff's cattle. Plaintiff paid this amount.

42. On August 24, 2023, Focus employee Simon Coughlin directly invoiced Plaintiff, in the amount of $5,906.93 for the feed of Plaintiff's cattle. Plaintiff paid this amount.

43. The 2023 Cattle were transferred to El Toro beginning on August 15, 2023. When the 2023 Cattle were sold, El Toro deducted the price of the feed from Plaintiff's proceeds.

44. As noted above, Rabo had directed Phillips to hire Focus Management Group as its "financial advisor." Rabo did not disclose its own incestuous ties to Focus, whose subsequent actions disclosed its clear motivation was to protect Rabo at all costs. Focus, in furtherance of Rabo's objectives, took the position that all funds held in trust and all cattle housed on Phillips' feed lot and all Phillips' accounts were assets that secured Phillips' loans and, accordingly, encouraged Phillips to continue to use Plaintiff's funds to cover Phillips' operating expenses and pay down the Rabo loans.

45. Phillips, Rabo and Focus knew the cattle on Phillips' lot and funds in the Custodial Accounts were not Phillips' assets and could not be security for the Rabo loans. Nevertheless, at Rabo's direction, no later than August 4, 2023, Focus advised Phillips that it could lawfully apply funds under its control that belonged to its customers to make payments to Rabo. In furtherance of the scheme to funnel money to Rabo, Focus issued instructions that Plaintiff's funds and proceeds be

sent to Rabo. Mechanics, based on its relationship with Rabo and its participation in the conspiracy, would then send Rabo money that should have been held in the Custodial Accounts.

46. An internal Rabo credit memo confirms Rabo's knowledge, as of August 1, 2023, that "Third-party [Plaintiff] owned cattle represent 99.3% [19,045 head] of the current head on feed, with company-owned cattle representing the remaining 0.7% [119 head]." On August 3, 2024, Rabo's own loan restructuring officer, Roger Becker, evaluated Phillips' records and acknowledged that Rabo had no lien rights in the cattle on Phillips' yard which "belong to others" and there was no Rabo livestock collateral to count. This did not stop Rabo from asserting a lien against not only any funds in Phillips' accounts, but all cattle remaining on Phillips' yard at the time of its collapse.

47. By August 1, 2023, with Phillips in financial free fall, and knowing that the end was near, Rabo moved to aggressively protect its own interests. Rabo denied Phillips any further loans, cutting off its lifeline. Rabo also nominated Focus as Phillips' receiver to the Court without bothering to disclose the extensive preexisting, symbiotic relationship between the two. In support of the Focus receivership application, Rabo misrepresented that it held lien rights in over 10,200 head of livestock and "the proceeds therefrom." In support of the receivership application, Rabo fabricated a story that it was "only now coming to be known" that Phillips' "business has been characterized by large-scale and systemic fraud." Relying on Rabo and Focus' misrepresentations, the Court appointed Focus as receiver on August 25, 2023. For avoidance of doubt, none of Plaintiff's causes of action against Focus arise from any act or omission undertaken by Focus on or after August 25, 2023.

48. In addition to the loss of his advances and the diversion of his 2022 and 2023 cattle proceeds, at the end of each cycle, Phillips and Plaintiff would calculate the "over and under" on the cattle. If Plaintiff had advanced more than necessary to purchase and feed the cattle, the balance would be returned. For 2022 and 2023, Phillips failed to pay Plaintiff approximately $1 million for the "over and under" on the 2022 and 2023 Cattle.

/ / /

/ / /

**FIRST CAUSE OF ACTION**

**(For Violation of Penal Code Section 496(c))**

**(Against Defendants Mechanics and Focus)**

49. Plaintiff repeats and realleges paragraph 1 through 48 and incorporates the same by reference as if fully set forth herein.

50. Penal Code § 496 provides for liability of any person who aids in concealing or withholding stolen property from its owner with knowledge that it has been stolen. Mechanics and Focus aided in the concealment and withholding of Plaintiff's funds that were entrusted to Phillips, with knowledge that they had been stolen.

51. As a result of Defendants' violations of Penal Code § 496, Plaintiff has suffered a financial injury in an amount to be proven at trial, but not less than $12,461,361.72. Pursuant to Penal Code § 496(c), Plaintiff is entitled to recover three times the amount of his actual damages, costs of suit, and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**

**(For Conversion)**

**(Against Defendants Mechanics and Focus)**

52. Plaintiff repeats and realleges paragraph 1 through 51 and incorporates the same by reference as if fully set forth herein.

53. Plaintiff owned and had the right to possession of identifiable funds in an amount certain, that were deposited into the trust accounts at Mechanics Bank which included prepaid sums for the purchase of cattle and feed. Such amounts total $3,750,000.

54. Plaintiff owned and had the right to possession of identifiable funds in an amount certain, that were deposited into the accounts at Mechanics Bank, which were the proceeds of sales of cattle owned by Plaintiff. Such amounts total $7,484,498.62 for the 2022 cattle.

55. Plaintiff owned and had the right to possession of cattle housed on Phillips' feed lot. The market value of the 2023 cattle was $7,833,862.72.

56. Mechanics and Focus knowingly conspired with Rabo to convert Plaintiff's funds for Rabo's benefit. In furtherance of the conspiracy, Plaintiff's funds were diverted from Mechanics

Bank custodial accounts to Phillips' operating account for the express purpose of retransferring the funds to Rabo.

57. Rabo, Mechanics and Focus pressured the feed lot operators to convert customer assets and funds that they held in trust for their customers and to use the fruits of the conversions to pay down Phillips' loan obligations to Rabo. Mechanics and Focus provided substantial assistance to effectuate the conversion of Plaintiff's prepaid funds and cattle sale proceeds.

58. Rabo seized and fraudulently and falsely claimed senior security interests in funds and cattle owned by Plaintiff in which Rabo has no right to possession.

59. Rabo has exercised dominion and control over Plaintiff's funds and cattle and Rabo treated those funds and cattle as if they were its own.

60. As an actual and proximate result of the conversion of Plaintiff's funds and cattle Plaintiff has been damaged in an amount to be proven at trial.

61. Defendants acted maliciously and oppressively, in that they engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship and did so with a willful and conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages.

## THIRD CAUSE OF ACTION

**(For Aiding and Abetting Breach of Fiduciary Duty)**

**(Against Defendants Mechanics and Focus)**

62. Plaintiff repeats and realleges paragraph 1 through 61 and incorporates the same by reference as if fully set forth herein.

63. As Plaintiff's agent, Phillips owed a fiduciary obligation of the utmost loyalty and honesty to Plaintiff.

64. Plaintiff entrusted Phillips with funds to be held for and applied solely for the benefit of Plaintiff, giving rise to fiduciary relationship of trust and good faith.

65. As a result of the fiduciary relationship between Plaintiff and Phillips, Plaintiff was entitled to rely on Phillips to act in Plaintiff's best interests, place Plaintiff's interests before its own and fully and truthfully disclose all material facts to Plaintiff.

66. Phillips breached its fiduciary duties owing to Plaintiff by, among other things, (a) failing to segregate Plaintiff's advances for purchases of cattle by depositing them into a trust account; (b) depositing the advances for purchases of cattle into Phillips' operating account; (c) using Plaintiff's advances to pay Phillips' own operating expenses; (d) stealing Plaintiff's cattle sales proceeds and diverting them to third parties, including Rabo; (e) failing to hold Plaintiff's cattle sales proceeds in trust; (f) failing to remit Plaintiff's cattle sales proceeds to Plaintiff; and (g) intentionally concealing Phillips' precarious financial condition, improper use of Plaintiff's funds and Rabo's complicity in the theft and fraud.

67. Defendants Mechanics and Focus knew, or should have known, that despite its fiduciary obligations to Plaintiff, Phillips was misappropriating Plaintiff's assets, concealing material facts from Plaintiff and defrauding Plaintiff out of millions of dollars Phillips held in trust for Plaintiff.

68. Defendants Mechanics and Focus nevertheless acted in concert with and aided and abetted Phillips' breaches of those fiduciary duties by directing, encouraging, facilitating and concealing Phillips' fraud. Mechanics and Focus assisted Phillips in effectuating the covert transfer of Plaintiff's funds to Rabo.

69. As an actual and proximate result of Defendants' aiding and abetting Phillips' breaches of fiduciary duty, Plaintiff has suffered damages in an amount to be proven at trial but not less than $100 million.

70. Defendants acted maliciously and oppressively, in that they engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship and did so with a willful and conscious disregard for Plaintiff's rights, entitling Plaintiff to an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

**(For Negligence)**

**(Against Defendant Mechanics)**

71. Plaintiff repeats and realleges paragraph 1 through 70 and incorporates the same by reference as if fully set forth herein.

72. From 2019 through the present, Plaintiff has held a deposit account at Mechanics Bank. As a result of the depositor-banker relationship between them, Mechanics owed duties of reasonable care to Plaintiff.

73. Phillips established and maintained trust accounts at Mechanics for Plaintiff's benefit. Mechanics knew that those accounts were intended to hold funds that belonged to Phillips' customers.

74. Phillips' operating account was frequently overdrawn, reaching a negative balance of -$577,882.05 on December 1, 2021. These habitual overdrafts should have raised red flags as to the security of the trust accounts for the benefit of Phillips' customers. Mechanics repeatedly complied with directions from Rabo to release Plaintiff's funds to allow Phillips to pay its loan obligations to Rabo. At no time did Mechanics alert Plaintiff to the shell game being played with his funds, much less seek his consent for the transfers.

75. Mechanics, as a bank, is required to maintain controls to protect the security of the deposits entrusted to it. Mechanics negligently failed to maintain proper controls over the trust accounts for Plaintiff's benefit.

76. Mechanics' negligence in failing to maintain proper controls over the trust accounts enabled Phillips to wrongfully transfer funds belonging to Plaintiff from the trust accounts to its operating account to make payments to Rabo. Had Mechanics exercised reasonable care to maintain proper controls over the trust accounts, the wrongful transfers would not have occurred.

77. As an actual and proximate result of Mechanics' negligence, Plaintiff has been damaged in an amount to be proven at trial but not less than $100 million.

## FIFTH CAUSE OF ACTION

**(For Elder Abuse in Violation of Welfare & Institutions Code § 15610.3(a)(2))**

**(Against Defendants Rabo, Mechanics and Focus)**

78. Plaintiff repeats and realleges paragraph 1 through 77 and incorporates the same by reference as if fully set forth herein.

79. Plaintiff is a California resident who at all relevant times was over the age of 65. As such, he is an "elder" within the meaning of California Welfare & Institutions Code Section

15610.27. Plaintiff has been known to Rabo, and has conducted business with Rabo, since Rabo launched operations in the United States over 24 years ago. Plaintiff had shared a close relationship with Rabo, its predecessor and its successor, Mechanics for over 30 years.

80. In 2002, Rabo acquired a small community bank in El Centro, Valley Independent Bank, where Plaintiff maintained his accounts. Plaintiff had relationships with VIB's officers who all stayed on and continued to service Plaintiff's accounts and loans after the Rabo acquisition. Through the years, Plaintiff had regular interactions with Rabo employees and officers.

81. Rabo employees moved to Mechanics Bank with Rabo's retail accounts and Plaintiff continued his banking relationship with Rabo's successor. Rabo and Mechanics at all times had access to Plaintiff's personal information, including information submitted in connection with his accounts and loans

82. In January 2023 Plaintiff was diagnosed with advanced, stage 4 cancer and has been ill since that diagnosis. Rabobank and Mechanics Bank at all times knew of Plaintiff's advanced age and physical disabilities which left him vulnerable to financial abuse by Rabo and Mechanics. Preying on Plaintiff's age and disabilities, Rabo and Mechanics willfully targeted Plaintiff and the assets Phillips held in trust for Plaintiff.

83. In violation of Welfare & Institutions Code § 15610.30(a)(2), Mechanics and Focus assisted Rabo in taking, secreting, appropriating, obtaining, and retaining Plaintiff's property with knowledge that harm would likely be caused to Plaintiff, and knowing that their conduct would cause harm to Plaintiff. Defendants nevertheless took or assisted in the taking and concealment of Plaintiff's property for a wrongful use, as that term is defined by Welfare & Institutions Code § 15610.30.

84. Defendants knew or should have known that their abusive conduct in taking, secreting, appropriating, obtaining, and retaining Plaintiff's property was directed toward a senior citizen and that it caused him to suffer substantial loss of property.

85. By their actions, Rabo, Mechanics and Focus committed financial abuse of an "elder" within the meaning of Welfare and Institutions Code Section 15610.30.

86. As a result of Defendants' financial elder abuse alleged above, Plaintiff has suffered damages in an amount not less than $12,461,361.72.

87. In taking, secreting, appropriating, obtaining, and retaining Plaintiff's property, Defendants acted fraudulently, oppressively, and maliciously. Accordingly, Plaintiff is entitled to recover exemplary or punitive damages sufficient to punish and make an example of Defendants.

88. Plaintiff is also entitled to an award of reasonable attorneys' fees and costs pursuant to Welfare and Institutions Code Section 15657.5.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For treble damages in an amount to be proven at trial but not less than $37,384,085.16.

**ON THE SECOND CAUSE OF ACTION**

1. For actual compensatory and consequential damages in an amount to be proven at trial; and

2. For exemplary and punitive damages, according to proof.

**ON THE THIRD CAUSE OF ACTION**

1. For actual compensatory and consequential damages in an amount to be proven at trial but not less than $100 million; and

2. For exemplary and punitive damages, according to proof.

**ON THE FOURTH CAUSE OF ACTION**

1. For actual compensatory and consequential damages according to proof but not less than $100 million.

**ON THE FIFTH CAUSE OF ACTION**

1. For actual compensatory damages according to proof but not less than $12,461,361.72;

2. For treble damages; and

3. For exemplary and punitive damages, according to proof;

**ON ALL CAUSES OF ACTION**

1. For costs of suit including Plaintiff's reasonable attorneys' fees as permitted by law;
2. For prejudgment interest; and
3. For such other relief as the Court deems just and proper.

DATED: August 3, 2026

LINER FREEDMAN TAITELMAN + COOLEY, LLP

By: ______________________________

Bryan J. Freedman
Ellyn S. Garofalo
Sean M. Hardy

Attorneys for Plaintiff CHARLES JOHNSON dba CJ CATTLE CO.

# PROOF OF SERVICE

F.R.C.P. 5 / C.C.P. §§ 1010.6. and 1013/ Cal. R. Ct. R. 2.251

I am a resident of, or employed in, the County of Los Angeles. I am over the age of 18 and not a party to this action. My business address is: Liner Freedman Taitelman + Cooley, LLP, 1801 Century Park West, 5th Floor, Los Angeles, CA 90067. On **August 3, 2026,** I served the following listed document(s), by method indicated below, on the parties in this action:

**FOURTH AMENDED COMPLAINT**

***SEE ATTACHED SERVICE LIST***

☐ **BY U.S. MAIL**
By placing ☐ the original / ☐ a true copy thereof enclosed in a sealed envelope(s), with postage fully prepaid, addressed as per the attached service list, for collection and mailing at 1801 Century Park West, 5th Floor. Los Angeles, CA 90067, following ordinary business practices. I am readily familiar with Liner Freedman Taitelman + Cooley, LLP's practice for collection and processing of documents for mailing. Under that practice, the document is deposited with the United States Postal Service on the same day as it is collected and processed for mailing in the ordinary course of business.

☐ **BY ELECTRONIC SERVICE by** uploading the document listed above to the Court's Electronic Filing Service Provider (First Legal https://www.firstlegal.com/ or One Legal https://www.onelegal.com/) for e-service to the email address(es) set forth on the attached service list. To my knowledge, the e-service was reported as complete and without error. See Cal. R. Ct. R. 2.251 and CCP § 1010.6.

☐ **BY OVERNIGHT DELIVERY**
By delivering the document(s) listed above in a sealed envelope(s) or package(s) designated by the express service carrier, with delivery fees paid or provided for, addressed as per the attached service list, to a facility regularly maintained by the express service carrier or to an authorized courier or driver authorized by the express service carrier to receive documents. **Note**: Federal Court requirement: service by overnight delivery was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

☒ **BY EMAIL**
By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list from the email address mzajicek@lftcllp.com. To my knowledge, the transmission was reported as complete and without error. Service by email was made ☒ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order. *See* Cal. R. Ct. R. 2.260. and 2.251:(b)(1)(B). ☒ The act of e-filing is evidence that the party agrees to accept service at the electronic service address the party has furnished to the court under Cal. R. Ct. Rule 2.256(a)(4)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct. Executed on August 3, 2026 at Los Angeles, California.

Michelle Zajicek | */s/ Michelle Zajicek*
Signature

**SERVICE LIST**

| | |
|---|---|
| Teri T. Pham, Esq.<br>Yass Sepidnameh, Esq.<br>ENENSTEIN PHAM GLASS & RABBAT<br>3200 Bristol Street, Suite 500<br>Costa Mesa, CA 92626<br>tpham@epgrlawyers.com<br>ysepidnameh@epgrlawyers.com<br>ttpassistant@epgrlawyers.com | *Defendants and Cross-Defendants Phillips Cattle Co., Inc. and Western Meat Processors, Inc.* |
| J. Jackson Waste<br>Kendall M. Lovell.<br>Angela Han<br>FENNEMORE LLP<br>8080 N. Palm Avenue, Third Floor<br>Fresno, CA 93711<br>Telephone: (559) 432-4500<br>Facsimile: (559) 432-4590<br>E-mail: jwaste@fennemorelaw.com<br>klovell@fennemorelaw.com<br>ahan@fennemorelaw.com<br>clalonde@fennemorelaw.com<br>jgill@fennemorelaw.com | *Attorneys for Defendant Rabo Agrifinance LLC* |
| John McHugh<br>Fennemore Craig, P.C.<br>3615 Delgany Street, Suite 1100<br>Denver, CO 80216<br>Tel: (303) 764-3722<br>Email: jmchugh@fennemorelaw.com | |
| Dirk B. Paloutzian<br>Natalya M. Ferdinandi<br>Baker Manock & Jensen<br>5260 N. Palm Ave., Suite 201<br>Fresno, CA 93704<br>Tel: (559) 432-5400<br>Fax: (559) 432-5620<br>Email: dpaloutzian@bakermanock.com<br>nferdinandi@bakermanock.com<br>lmarcyes@bakermanock.com (assistant)<br>jlewis@bakermanock.com (assistant) | |
| Teri T. Pham, Esq.<br>Yass Sepidnameh, Esq.<br>ENENSTEIN PHAM GLASS & RABBAT<br>3200 Bristol Street, Suite 500<br>Costa Mesa, CA 92626<br>Tel: (714) 292-0262<br>tpham@epgrlawyers.com<br>ysepidnameh@epgrlawyers.com<br>ttpassistant@epgrlawyers.com | Attorneys for Robert Bauer, as Co-Trustee of the Bauer Family Trust dated March 4, 1991; Joan Bauer, as Co-Trustee of the Bauer Family Trust dated March 4, 1991, and Robert Bauer, as Trustee of the Phillip Himmelfarb Testamentary Trust dated April 9, 1997 |

| | |
|---|---|
| Leslie Cohen, Esq.<br>LESLIE COHEN LAW, PC<br>1615A Montana Avenue<br>Santa Monica, CA 90403-1807<br>leslie@lesliecohenlaw.com | Bankruptcy Attorneys for Joan Bauer, as Co-Trustee of the Bauer Family Trust dated March 4, 1991 |
| Richard C. Conway, Esq.<br>Rissa A. Stuart, Esq.<br>KAHN SOARES & CONWAY LLP<br>219 North Douty Street<br>Hanford, CA 93230<br>rconway@kschanford.com<br>rstuart@kschanford.com<br>pavila@kschanford.com<br>kdelira@kschanford.com<br>mmoran@kschanford.com | Attorneys for Overland Stock Yards |
| Jason E. Rios, Esq.<br>Mikayla E. Kutsuris, Esq.<br>FELDERSTEIN FITZGERALD<br>WILLOUGHBY PASCUZZI & RIOS<br>500 Capital Mall, Suite 2250<br>Sacramento, CA 95814<br>E-mail: jrios@ffwplaw.com<br>mktsuris@ffwplaw.com | Attorneys for Court-Appointed Receiver Juanita Schwartzkopf |
| Mitchell A. Driskill, Esq.<br>WALKER & DRISKILL, PLC<br>300 South Imperial Avenue, Suite 10<br>El Centro, CA 92243<br>E-mail: mitch@walkerdriskill..com | Attorneys for Defendant Denise Matejovsky |
| Michael L. Farley, Esq.<br>FARLEY LAW FIRM<br>500 North Willis Street<br>Visalia, CA 93291<br>kfike@farleylawfirm.com | Attorneys for Defendant Steven Snow |
| Michael J. Gomez, Esq.<br>David T. Moore, Esq.<br>FRANDZEL ROBINS BLOOM & CSATO<br>1000 Wilshire Boulevard, 19th Floor<br>Los Angeles, CA 90017-2427<br>Telephone: (323) 852-1100<br>Facsimile: (323) 651-2577<br>E-mail: mgomez@frandzel.com<br>dmoore@frandzel.com | Attorneys for AgWest Farm Credit, PCA |
| MCDOUGAL, BOEHMER, FOLEY,<br>LYON, MITCHELL & ERIKSON<br>Steven E. Boehmer, Esq.<br>E-mail: sboehmer@mcdougallawfirm.com | Attorneys for ETX, LLC |

| | |
|---|---|
| Christopher D. Sullivan<br>Stacy Pratt<br>Quentin Roberts<br>Matthew Chesser<br>Michaela ORourke<br>SULLIVAN PRATT LLP<br>601 Montgomery Street, Suite 525<br>San Francisco, CA 94111<br>Tel: (415) 691-4518<br>Email: csullivan@sullivanblackburn.com<br>spratt@sullivanblackburn.com<br>qroberts@sullivanblackburn.com<br>mchesser@sullivanblackburn.com<br>michaela@sullivanblackburn.com | Attorneys for Defendant FOCUS MANAGEMENT GROUP USA, INC. |
| Paloma I. Moreno-Acosta<br>HUSCH BLACKWELL LLP<br>355 S. Grand Ave., Suite 2850<br>Los Angeles, CA 90071<br>Tel: (213) 337-6550<br>Fax: (213) 337-6551<br>Email: Paloma.Acosta@huschblackwell.com<br>Simone.Stevens@huschblackwell.com | Attorneys for Defendant Mechanics Bank |